TODD BLANCHE
Deputy Attorney General
BILAL A. ESSAYLI
First Assistant United States Attorney
ALEXANDER B. SCHWAB (Cal. Bar No. 283421)
Assistant United States Attorney
Acting Chief, Criminal Division
JOSHUA O. MAUSNER (Cal. Bar No. 260251)
Assistant United States Attorney
National Security Division
      1200 United States Courthouse
      312 North Spring Street
      Los Angeles, California 90012
      Telephone: (213) 894-1259 / 0619
      E-mail:    alexander.schwab@usdoj.gov
                 joshua.mausner@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

                    UNITED STATES DISTRICT COURT

                FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. CR 25-00691-AB |
|---|---|
| Plaintiff, | GOVERNMENT'S MEMORANDUM IN SUPPORT OF APPLICATION FOR REVIEW OF MAGISTRATE JUDGE'S ORDER SETTING CONDITIONS OF RELEASE |
| v. | |
| DAVID RAYMOND BROWN, fka "David Brown Levy, fka "David Addison Brown," | Hearing Date: January 7, 2026 Hearing Time: 1:30 p.m. |
| Defendant. | |

     Plaintiff United States of America, by and through its counsel of record, the Deputy Attorney General, First Assistant United States Attorney for the Central District of California, and Assistant United States Attorneys Alexander B. Schwab and Joshua O. Mausner, hereby files its Memorandum in Support of Application for Review of Magistrate Judge's Order Setting Conditions of Release (Dkt. 29).

//

//

//

The government's Application for Review of Magistrate Judge's Order Setting Conditions of Release is based upon the below memorandum of points and authorities, the files and records in this case, and such further evidence and argument as the Court may permit.

The records and communications referenced in the memorandum are not attached as exhibits because they are voluminous and would require redactions for personal identifying information and sensitive financial information.  The government will have these documents available to proffer at the hearing on this Application.

Dated: January 7, 2026              Respectfully submitted,

                                    TODD BLANCHE
                                    Deputy Attorney General

                                    BILAL A. ESSAYLI
                                    First Assistant United States
                                    Attorney


                                     /s/
                                    ALEXANDER B. SCHWAB
                                    JOSHUA O. MAUSNER
                                    Assistant United States Attorneys

                                    Attorneys for Plaintiff
                                    UNITED STATES OF AMERICA

2

TABLE OF CONTENTS

MEMORANDUM OF POINTS AND AUTHORITIES................................1

I.    INTRODUCTION................................................1

II.   BACKGROUND..................................................2

      A.    The Offense Conduct and Charges.......................2

      B.    Defendant's Arrest, Initial Appearances, and Detention....3

      C.    Defendant's Application for Reconsideration of
            Detention.............................................5

      D.    Defendant's Failure to Satisfy Bond Conditions and
            Attempts to Defraud Potential Sureties and the Court
            from MDC-LA...........................................6

III.  ARGUMENT....................................................9

      A.    Applicable Law........................................9

      B.    Defendant Is a Flight Risk, a Significant Economic
            Danger to the Community, and Cannot Be Trusted To Be
            Honest with Pretrial Services and This Court..............9

IV.   CONCLUSION.................................................13

TABLE OF AUTHORITIES

United States v. Motamedi,
    767 F.2d 1403 (9th Cir. 1985) .................................. 9

United States v. Villegas,
    587 F. Supp. 3d 1010 (C.D. Cal. 2020) ......................... 5

United States v. Ward,
    63 F. Supp. 2d 1203 (C.D. Cal. 1999) .......................... 5

18 U.S.C. § 1028A ........................................... 3
18 U.S.C. § 1343 ........................................... 2
18 U.S.C. § 1957 ........................................... 3
18 U.S.C. § 3142 ........................................ 5, 9
Federal Rule of Criminal Procedure 5 ............................ 3

## MEMORANDUM OF POINTS AND AUTHORITIES

**I.   INTRODUCTION**

Defendant David Raymond Brown is a Hollywood producer, an accountant in the independent film scene, and a serial fraudster. Over the course of several years, defendant orchestrated a sophisticated scheme in which he defrauded victims across the country out of more than $12 million.  After embezzling and misappropriating funds from various film projects, defendant moved on to a "house flipping" business in which he spent investment funds on himself and used some of the funds to pay back his prior victims.  Throughout each stage of the schemes, defendant found ways to gaslight his victims, delay repayment, and, when the threat of discovery or litigation became imminent, make Ponzi-scheme style repayments by fleecing new victims.

After his series of frauds and civil litigation brought by numerous victims was highlighted in a long-form Los Angeles Times article in March 2023,[1] defendant moved out of Los Angeles to South Carolina, where his fraud schemes continued.  After being interviewed by FBI and IRS-CI agents, thereby being made aware of the federal investigation, defendant doubled down on his fraud scheme and put in motion a series of actions aimed at attempting to further conceal his scheme, including continuing to lie to victims and investigating agents, tricking victims into signing fraudulent and backdated loan documentation, and advising a former business partner and victim that he could "throw away" a Grand Jury subpoena for documents, among

---

[1] https://www.latimes.com/entertainment-arts/business/story/2023-05-16/hollywood-producer-fraud-kevin-spacey-david-duchovny-david-brown.

other acts of dishonesty and obstruction.  He has made false statements, under oath, to other courts, and, notably, continues to engage in fraud and attempts to conceal material facts from Pretrial Services and this Court while in custody at MDC-LA.  Defendant faces a significant sentence if convicted, including mandatory-minimum consecutive sentences for aggravated identity theft counts.  He is both an economic danger and flight risk, and most importantly, cannot be trusted to be honest and candid with the Court or Pretrial Services, nor to comply with any terms of supervision if released on bond.  He should remain detained pending trial.

**II.   BACKGROUND**

**A.    The Offense Conduct and Charges**

Defendant is charged in a 21-count Indictment alleging an extensive and sophisticated series of fraud schemes, money laundering, and aggravated identity theft.

Counts One through Nine charge a wire fraud scheme, in violation of 18 U.S.C. § 1343.  The scheme alleges, in summary, that defendant used his position as a producer and accountant for film productions to embezzle and misappropriate funds from those productions and the individuals and entities financing them, to whom he owed a fiduciary duty.  Defendant then used the misappropriated funds for his own benefit, including the purchase of multiple luxury vehicles (Mercedes G-Wagon, Tesla Cybertruck, Tesla Model X, Tesla Model Y); mortgage payments and renovations on his personal residence, including installation of a pool; purchase of additional homes, including for family members; payments to family members; payments for surrogacy services; private school tuition; and other personal expenses.

Counts Ten through Nineteen charge transactional money laundering, in violation of 18 U.S.C. § 1957, for defendant's wiring of fraud proceeds through his bank and other accounts.

Counts Twenty and Twenty-One charge aggravated identity theft, in violation of 18 U.S.C. § 1028A, for defendant's use of the name and identity of another "David Brown" who is more successful and more prominently known in the film industry, to falsify his own credentials to obtain film funding from victims.

The evidence supporting the charges is strong and shows a pattern of fraud, including a similar modus operandi in defrauding numerous victims, over the course of years, through multiple different film projects.  The evidence includes defendant's own emails and text messages; statements and anticipated testimony from multiple victims; documentary evidence, including funding agreements, loan documentation, UCC filings, and other documents drafted and sent to victims by defendant; and extensive financial records, including records from victims, defendant's bank accounts, and tax records.

**B.    Defendant's Arrest, Initial Appearances, and Detention**

Defendant was arrested on August 27, 2025, near his home in South Carolina.  Following his arrest, he appeared in South Carolina and initially requested that his detention hearing be conducted in that district.  When Magistrate Judge Hodges, after reviewing the government's evidence, noted that she had "grave concerns" about releasing defendant on bond, he reversed course, waived his rights under Federal Rule of Criminal Procedure 5, and requested that his detention hearing instead be conducted here in Los Angeles.

Defendant made his initial appearance in this district before Chief Magistrate Judge Stevenson on September 11, 2025, where

3

defendant proceeded with his detention hearing.  (Dkt. 18.)  During the contested evidentiary hearing, the government admitted various exhibits detailing the extensive fraud schemes defendant operated, revealing that defendant targeted new victims even after defendant was interviewed by law enforcement and alerted to the investigation, and demonstrating that defendant made false statements under oath and in court filings up to mere weeks prior to his arrest.[2]  The evidence showed defendant exhibited a pattern of dishonesty, including with courts, that make him untrustworthy, not amenable to supervision if released from custody pending trial, and both a serious flight risk and a danger to the community.

While defendant offered family members' properties as bail resources, Chief Judge Stevenson ordered defendant detained as both a serious flight risk and an economic danger to the community.[3]  (Dkts. 18, 19.)  The Court found defendant to be a serious risk of nonappearance given both the nature of the allegations, which the Court described as a large and sweeping fraud enterprise, as well as insufficient sureties and bail resources that were unconnected to the alleged fraud schemes, given the proposed sureties were recipients of proceeds from defendant's fraud schemes.  Additionally, the Court rejected defendant's offer to impose financial restrictions as conditions of release, noting that neither the Court nor Pretrial

---

[2] The records and communications that are referenced in this memorandum and that were proffered at the prior hearings are not attached as exhibits because they are voluminous and would require redactions for personal identifying information and sensitive financial information.  The government will have these documents available to proffer at the hearing on this Application.

[3] The Court's detention order concurred with the recommendation of the Pretrial Services Report that defendant be detained pending trial.

4

Services are in a position to act as forensic auditors to ensure defendant does not continue to operate his extensive and sophisticated fraud schemes, as he continued to do after becoming aware that law enforcement was investigating him.

**C.    Defendant's Application for Reconsideration of Detention**

On October 7, 2025, defendant filed an Application for Reconsideration of the Order of Detention (Dkt. 22), purporting to "present two potential sureties not previously considered, two properties located in South Carolina owned by Brown Capital LLC to secure a bond."  The government opposed the application for reconsideration (Dkt. 25), noting that the purported new sureties were individuals who received proceeds from defendant's fraud scheme and were therefore inappropriate sureties, and that the properties defendant put forth to secure a bond were properties that were in foreclosure and no longer owned by defendant.[4]  The government contended that these were neither "changed circumstances" warranting reconsideration of the prior detention order,[5] nor were they

---

[4] The properties were legally owned by Brown Capital LLC, an entity defendant owns and controls.

[5] A detention order should be reconsidered by the Magistrate Judge only if there is new information "that has a material bearing on the issue whether there are conditions of release that will reasonably assure the appearance of such person as required and the safety of any other person and the community."  18 U.S.C. § 3142(f); United States v. Villegas, 587 F. Supp. 3d 1010, 1012 (C.D. Cal. 2020).  Courts have interpreted strictly the requirement that the new information was not known to the movant at the time of the previous hearing.  See United States v. Ward, 63 F. Supp. 2d 1203, 1206-07 (C.D. Cal. 1999).  As described in greater detail in the government's Opposition to Defendant's Application for Reconsideration of Pretrial Release (Dkt. 25), defendant failed to present any new or changed material information that was not already known to defendant at the time of his initial detention hearing, and defendant's Application for Reconsideration of Pretrial Detention should have been denied on those grounds alone.

sufficient to overturn the Court's concerns regarding defendant's appearance and safety of the community.

Chief Judge Stevenson held a hearing and granted defendant's application for reconsideration.  (Dkt. 27.)  The Court ordered defendant released upon posting of a $150,000 appearance bond, comprised of (1) a cash deposit of $25,000 and (2) an affidavit of surety without justification in the amount of $125,000 by a "responsible 3rd party or parties."  The Court ordered that defendant be released "to U.S. Probation and Pretrial Services ONLY" and added "Release only upon the posting of all conditions of the bond (cash deposit, affidavit of surety (CR-4)."  The Court also ordered that defendant's travel be restricted to the Central District of California, and that defendant "[r]eside as approved by the Supervising Agency."

**D.   Defendant's Failure to Satisfy Bond Conditions and Attempts to Defraud Potential Sureties and the Court from MDC-LA**

Following Chief Judge Stevenson's order setting conditions of release, defendant failed to meet the conditions of bond.  On December 30, 2025, Chief Judge Stevenson issued a "Notice of Defendant's Failure to Satisfy Bond Conditions" and set a status conference.  (Dkts. 30, 31.)

On December 23, 2025, Chief Judge Stevenson held a status conference regarding defendant's failure to satisfy the conditions of release.  At the hearing, the Court heard that defendant had been unable to satisfy the cash deposit, to secure adequate sureties, and to secure acceptable lodging in the District with a responsible party in the event of his release.

During the hearing, the government presented evidence that defendant continues to engage in fraud from MDC-LA, including attempting to defraud potential sureties into posting his bond and attempting to disguise from the Court that the source of these potential surety funds would have actually been from defendant himself, rendering the sureties as mere strawmen.  The evidence presented included defendant's correspondence from MDC in which he attempted to obtain surety funds by promising that acting as a surety would carry "no risk" and that defendant would supply the sureties with the funds through either forgiveness of debts the sureties purportedly owed to defendant or by promising payments through properties that are either in foreclosure or that defendant does not own.  Examples include:

- Email from defendant promising a potential surety[6] "If you would please do this [sign as a surety], we can throw away/tear up your loan agreement.  Consider it paid in full.  No repayment needed."  Defendant continues by offering the potential surety repayment after sale of "rental houses" that are in foreclosure and no longer owned by defendant, promising "if necessary, and to give you comfort, I would let you hold the amount of the surety bond letter so you don't have any risk, no matter what."

- Email from defendant promising a potential surety "you may consider the 'debt' forgiven.  When I got [sic] to do my taxes for 2025, I will write it off as a 'loss'.  So don't worry about it :)"

- Email from defendant asking a third party to reach out to a potential surety to let the surety know "David said, please don't forget, he is going to let you hold the $25,000 surety funds from house proceeds so you have comfort being a surety signer . . . Outside of the house money, David

---

[6] This potential surety is an individual who resides in South Carolina, and who appears to be involved in divorce proceedings between defendant and his partner.

7

said please tear up the loan agreement.  You are paid in full."

- Email from defendant promising a potential surety "I have been told I am in the clear to sell the two rental houses. I should net $150,000 to $180,000 AFTER closing/escrow cost.  So, if you would like, you can hold the $ (amount of bail) from escrow and have escrow send it directly to you to hold until after my trial when you could then refund it. This way, you have NO risk."

- Email from defendant confirming with potential surety "As stated, you can screenshot/save this message as proof that I agreed to void/consider the loan paid in full for your assistance here."

- Email from defendant to third party reminding third party to reach out to potential sureties to reiterate there is "NO RISK TO THEM" in being sureties.

- Email from defendant to potential surety offering "If you want to prepare a 1 page lien letter for the rental houses, [defendant's husband] can sign with my POA to give you a lien against the two rental houses until they are sold. That way, you have some assurances."

Chief Judge Stevenson expressed concern regarding defendant's actions and attempts to use third parties with "no risk" as strawmen to conceal the fact that defendant would be acting as his own surety, which would negate the reasoning behind having third parties, with something to lose, as sureties.  However, Chief Judge Stevenson noted that the government's Application for Reconsideration was pending with this Court, and therefore it was unclear whether Chief Judge Stevenson had jurisdiction to revoke or modify the bond while the Application was pending.  (Dkt. 33.)  Therefore, Chief Judge Stevenson ordered that "the original bond will remain as set by the Court.  Defendant will remain in custody pending the District Judge's

ruling on the Government's Application for Review/Reconsideration [Dkt no 29] of the previously set bond."[7]  (Dkt. 33.)

**III. ARGUMENT**

    **A.    Applicable Law**

The Bail Reform Act of 1984 requires "detention of the person before trial" without bail where "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community."  18 U.S.C. § 3142(e)(1).  Detention is appropriate where a defendant is either a flight risk or a danger to the community; it is not necessary to prove both.  United States v. Motamedi, 767 F.2d 1403, 1406 (9th Cir. 1985).  A finding that a defendant is a risk of non-appearance must be supported by a preponderance of the evidence.  Id. at 1406-07.  A finding that a defendant is a danger to the community must be supported by clear and convincing evidence.  Id. at 1406; 18 U.S.C. § 3142(f).

    **B.    Defendant Is a Flight Risk, a Significant Economic Danger to the Community, and Cannot Be Trusted to Be Honest with Pretrial Services and This Court**

The fraud scheme alleged in the Indictment was sophisticated and carried out by defendant using means that show him to be both savvy and dishonest.  The charges include falsifying documents, making false representations to victims and others, and going to great lengths to attempt to conceal and cover up his scheme.  As alleged in the Indictment, in furtherance of the scheme and to conceal it, defendant, among other acts:

---

[7] Chief Judge Stevenson also ordered the parties to submit a status report, no later than February 2, 2026, regarding defendant's ability to satisfy the bond and any ruling by this Court on the Application for Review of Conditions of Release.

- Made false statements and representations to individuals and entities to whom he owed a fiduciary duty (i.e., Victim 1 and Victim 2 in the Indictment, among others);

- Created an entity that he controlled (i.e. Hollywood Covid Testing) to receive payments from film productions for purported services, which were falsified and were actually funds misappropriated to be used for defendant's own personal benefit;

- Used the identity and IMDB profile of another "David Brown" who was more successful and prominent in the film industry, and purported it to be his own, in order to burnish his credentials and extract funds from victims to be used for film productions that he instead used for his own benefit;

- After the May 2023 Los Angeles times article detailing his various fraud schemes, defendant moved from Los Angeles to South California where he continued his fraud schemes and hid from investors and others to whom he owed a fiduciary duty his history of fraud allegations and litigation;

- Repaid prior victims "lulling payments," using funds from other victims in a Ponzi-type scheme, to discourage and prevent victims from reporting the fraud to law enforcement;

- Claimed, in connection with civil litigation, that he would compensate one victim, but then intentionally paid the victim by checks that were drawn on insufficient funds; and

- Falsely claimed to representatives of CASHet[8] that he had been directed by the SEC to freeze the funds of an investor in one of the production company CASHet accounts.

Notably, defendant's fraud and dishonesty to conceal the scheme continued after he has made aware of the federal investigation. FBI and IRS-CI agents interviewed defendant in South Carolina on March 6, 2025. After the interview, when defendant was clearly made aware of the investigation, defendant doubled down on the fraud scheme and his

---

[8] CASHet is a company that provides prepaid debit cards and customized accounting software for use in film and television productions.

attempts to conceal his wrongdoing.  When a prior victim who defendant had paid back using funds from other victims received a subpoena as part of this investigation and reached out to defendant about it, defendant advised that he had already provided the documents to law enforcement (which was not true) and that the victim could either provide the documents or "throw away" the subpoena.

Defendant also took further affirmative steps to attempt to circle the wagons and further conceal his scheme after being made aware of the investigation, including inducing victims into signing backdated loan documents and then using those backdated loan documents to fraudulently claim that other victims of his fraud schemes have been made whole, or using fraudulent UCC forms to lull victims into believing they had been made whole.

Defendant has also made false statements in declarations made under oath to courts.  For example, on August 18, 2025, less than 10 days before his arrest in this matter, defendant filed, pro se, a verified civil complaint in Los Angeles Superior Court alleging breach of contract and other claims against an individual named Christopher McGowan and an entity named Flesh 2021 LLC, claiming payment owed from a $296,059.94 film production loan.  However, in correspondence prior to his filing the verified complaint, defendant had admitted unequivocally that he alone was responsible for the debt, not McGowan or Flesh 2021 LLC: "To be clear, Chris is not liable for this debt.  I've assumed it on behalf of Flesh 2021 LLC."

Also shortly before his arrest in August 2025, defendant filed a fraudulent declaration in a different matter he brought pro se in Los Angeles Superior Court, this time related to the sale of his home in Los Angeles after moving to South Carolina.  In a declaration signed

11

under penalty of perjury, defendant claimed to have made mortgage payments on the home and attached as an exhibit to his declaration a snipped portion of a bank statement that purported to show a wire transfer payment of $150,000 from defendant's bank account to a mortgage servicing company.  In actuality, defendant had cancelled and reversed the wire transfer the same day, and payment was never made.  Despite having cancelled the payment, defendant claimed under oath that the payment had been made and included a deliberately deceptive snippet of the bank statement in an attempt to defraud the court.[9]

Further proof of defendant's pattern of dishonesty and deceit, including with courts and other authorities, includes:

- 11 days after he was interviewed by FBI and IRS-CI in South Carolina, defendant signed loan refinancing documents for his mother's home in Tennessee (a home that defendant had previously purchased using investment money stolen from Victim 1 in the Indictment).  On the refinancing paperwork, defendant falsely affirmed and attested that he was not under IRS investigation, despite having been interviewed about his fraud scheme by the FBI and IRS-CI less than two weeks prior.

- Defendant previously had failed to report approximately $1 million on his 2021 tax return.  Following the March 2025 FBI and IRS-CI interview, defendant amended his 2021 return.

Lastly, as discussed above, defendant is continuing his pattern of fraud and deceit, even while detained at MDC in this matter. Defendant has been attempting to induce individuals to act as

---

[9] Victims in this matter have described a similar modus operandi by defendant, who has fraudulently claimed to have made payments to victims, including sending them photographs purporting to be of defendant at a bank making payments, or endorsing and soon after voiding checks, in order to lull victims.

sureties and post his bond by promising them payments from homes in foreclosure or that he does not own, or promising that there is "no risk" to being a surety because defendant himself will put up the funds.  Defendant continues his pattern of fraud and deceit, including deceiving Pretrial Services and this Court as to the sources of potential bond resources.  He cannot be trusted and should not be trusted to be truthful and candid with the Court or to abide by conditions of pretrial release.  Defendant is a brazen fraudster, even when under federal investigation and in federal detention, when he knows law enforcement is watching.  The fact that he accelerated his fraud scheme and further attempted to cover it up after knowing he was under investigation further aggravates the danger he poses, particularly his actions even while detained pending trial in this matter.  His pattern of fraud will continue and, based on past behavior, is likely to accelerate, as trial nears.  Releasing defendant after his continued attempts to defraud and obstruct, even after being arrested and detained, would only embolden such behavior further.

**IV.   CONCLUSION**

Defendant's actions show that he continues to be both a risk of flight and a significant economic danger to the community.  For pretrial supervision to "reasonably assure" a defendant's appearance and the safety of the community, the defendant must be amenable to supervision, and the defendant's habitual dishonesty with courts shows that he is not.

For the reasons stated above, the government respectfully requests that the Order Setting Conditions of Release be revoked, and defendant be ordered detained pending trial.